**PHOTOTRON CORPORATION,**
Plaintiff–Appellee,

v.

**EASTMAN KODAK COMPANY, Fuqua Industries, Inc., and Colorcraft Corporation, Defendants–Appellants.**

No. 88–1128.

United States Court of Appeals,
Fifth Circuit.

March 28, 1988.

ard G. Braman, Daniel R. Shulman, David M. Coyne, Minneapolis, Minn., Richard L. Brown, S. Gary Werley, Fort Worth Tex., for plaintiff-appellee.

Before BROWN, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

Eastman Kodak Company ("Kodak") Fuqua Industrial and Colorcraft Corp. appeal the granting of a preliminary injunction against Kodak's merger with Colorcraft Corporation, a subsidiary of Fuqua Industries, Inc. After reviewing the record and carefully considering the arguments presented by the parties, we reverse the order of the district court.

*Facts*

The defendants in this action, Colorcraft and Kodak, have reached an agreement to combine their photofinishing facilities throughout the United States. Colorcraft operates forty-one film processing plants, and Kodak has fifty such labs. The plaintiff in this suit, Phototron, processes film at nine plants in the southern and western United States.

These plants provide processing for amateurs' photographic film; Colorcraft, Kodak and Phototron have accounts with large and small retailers who receive film directly from the public. More than ten years ago, the photo processing market offered consumers two choices: either give film to a retailer who would then send the film to a wholesale processor, or use a mail-order service. The recent appearances of photo minilabs and of a trend toward vertical integration by large retailers such as Eckerd Drugs and Wal–Mart have significantly changed market relationships. Although the parties dispute the proper definition of the relevant market for this antitrust action, certainly many consumers —enjoying the wider range of options brought by advancing technology—have altered the manner in which they have their film processed. The more impatient cus-

Marvin Sloman, Carrington, Coleman, Sloman & Blumenthal, Tyler A. Baker, Dallas, Tex., for Eastman Kodak Co.

Charles E. Koob, Simpson, Thacker & Bartlett, New York City, for defendants-appellants.

Joseph M. Alioto, Alioto & Alioto, San Francisco, Cal., Quentin R. Wittrock, Rich-

tomers, for example, pay extra for the convenience of having their film back in an hour. In 1980, there were few minilabs in operation; today there are over 12,000. As affidavits in the record show, by 1986 minilabs accounted for thirty percent of the entire value and twenty-two percent of the volume of photofinishing services.

Wholesale labs have had to adapt to these changing market circumstances. Colorcraft now processes most of its orders overnight. Some large general retailers have chosen to integrate by installing minilabs on their premises. Many customers are no longer willing to wait a week for their pictures. Against this backdrop, Kodak and Colorcraft have agreed to merge their photofinishing facilities.

*Proceedings*

Phototron Corporation brought this action seeking, in part, to enjoin the merger of Kodak's and Colorcraft's photofinishing labs.[1] The district court granted a hearing in early February to consider Phototron's application for a preliminary injunction. At the request of the district court, the merger was postponed until February 23, 1988; and on February 22 the district court granted a preliminary injunction.

The record before the district court consisted of affidavits filed by the parties and the oral arguments heard in early February. In his Memorandum Opinion, Judge Mahon found that:

(1) Phototron has standing to challenge the merger;

(2) wholesale photofinishing is the relevant market;

(3) the merger may substantially lessen competition in the relevant market;

(4) the grant of preliminary injunction is appropriate given the threat of loss and damages Phototron may suffer.

*Issues*

Kodak challenges the district court's rulings on standing and the relevant market. Our decision on the standing issue, however, forecloses the need to take up the more difficult relevant market issue.

■ Before setting forth the strict standing requirements, we remind ourselves of a well established principle: a preliminary injunction can be granted only when the district court has found "a substantial likelihood that plaintiff will prevail on the merits." *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). One of the merits issues that must be decided at trial is whether Phototron has suffered an antitrust injury, for without such an injury, Phototron lacks standing to sue. *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. ——, ——, 107 S.Ct. 484, 491, 93 L.Ed.2d 427, 438 (1986). The district court therefore erred in handing down a preliminary injunction without first finding that Phototron had demonstrated a substantial likelihood of suffering an antitrust injury. The district court correctly noted that no rigorous proof of antitrust injury was necessary at this early stage of consideration.[2] Given the onerous effects of granting a preliminary injunction, however, more than mere pleading is necessary to establish standing even at this stage. Because the district court determined that the pleadings sufficed standing alone,[3] we must, at the least,

1. Kodak and Fuqua filed pre-merger notification materials on December 7, 1987 with the FTC and the Antitrust Division of the Justice Department pursuant to the Hart–Scott–Rodino Act. Phototron filed this action on December 21, 1987, three days before the FTC cleared the merger. In its complaint, Phototron alleges violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, Section 7 of the Clayton Act, 15 U.S.C. § 18, and state law. For relief, Phototron seeks $100 million in actual damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, and an injunction under Section 16 of the Clayton Act.

2. The district court stated:

Only the issue of *preliminary* injunctive relief is before the Court.... Phototron must allege an antitrust injury which flows from the proposed Kodak–Colorcraft combination and sustain only that burden of proof which would entitle it to *preliminary*, not permanent injunctive relief.

Mem. Op. at 15.

3. The district court initially indicated that it would decide whether Phototron was likely to succeed on the standing issue.

Phototron has made the requisite allegations in its Complaint and, as will be seen in Part II(b) of this Opinion, made the applicable

remand the case for a determination whether there is a substantial likelihood that Phototron will be able to prove antitrust injury at trial. Given the need for us to render a final decision on this issue, we look beyond a remand and review the record to determine whether we can make the "substantial likelihood" determination ourselves.

In *Cargill,* the Supreme Court decided that a competitor could obtain a permanent injunction against a merger by meeting the same standing requirement that the Court articulated earlier in *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). *Brunswick* allows treble damage recovery under Section 7 of the Clayton Act only when plaintiffs have shown antitrust injury:

> Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.

429 U.S. at 489, 97 S.Ct. at 697.

This burden on the private plaintiff is a significant one, and the Supreme Court's decision to make it such was aptly noted in Justice Stevens' dissent in *Cargill:*

> This case presents the question of whether the antitrust laws provide a remedy for a private party that challenges a horizontal merger between two of its largest competitors. The issue may be approached along two fundamentally different paths. First, the Court might focus its attention entirely on the post merger conduct of the merging firms and deny relief unless the plaintiff can prove a violation of the Sherman Act. Second, the Court might concentrate on the merger itself and grant relief if there is a significant probability that the merg-

er will adversely affect competition in the market in which the plaintiff must compete. Today the Court takes a step down the former path.

479 U.S. at ——, 107 S.Ct. at 496, 93 L.Ed. 2d at 443–44. Bound by precedent, we follow the Supreme Court's tracks.

■ Under *Cargill,* a competitor of two merging entities has standing to challenge the merger if an allegation and proof of predatory pricing is made. In its complaint, Phototron alleges that Kodak and Colorcraft have provided photofinishing services at below cost; specifically, the complaint asserts that the companies have been operating their wholesale labs "unprofitably or at substantially reduced profit margins for at least the short term, until plaintiff is forced to go out of business or sell to defendants or their surrogates." "Operating … at substantially reduced profit margins," however, is not equivalent to pricing in a predatory manner; it is simply pricing in a competitive manner. An allegation that one is operating "unprofitably" comes close to alleging predatory pricing.[4] We withhold a determination of how precisely predatory pricing must be alleged in order to assert an antitrust injury, turning instead to the easier conclusion that Phototron has not demonstrated a substantial likelihood of prevailing on its allegation at trial.

■ Phototron alleges carefully that Kodak and Colorcraft were operating unprofitably because they "have charged prices for photofinishing services to actual and potential retail customers of plaintiff that are substantially below the prices *plaintiff* can charge and still operate profitably" (emphasis added). The sentence's conclusion does not, of course, necessarily follow

---

showing required for equitable injunctive relief.
Mem.Op. at 15–16. Part II(B), however, never addresses the standing issue, but rather focuses only on the likelihood of success on the statutory claims. The merits of any case embody several elements that the plaintiff must prove to prevail at trial. In this case, those elements are: 1) standing, 2) establishing the relevant market, and 3) one or more of the substantive claims (e.g. Clayton Act § 7, Sherman Act §§ 1 and 2).

4. Kodak urges us to find that "operating unprofitably" is not sufficient for asserting predatory pricing. Our Circuit defines predatory pricing as pricing below marginal or average variable cost. *Bayou Bottling, Inc. v. Dr. Pepper Co.,* 725 F.2d 300, 305 (5th Cir.), *cert. denied,* 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984). The Supreme Court has not given a pinpoint definition of predatory pricing; it has thus far settled for the vague term "pricing below cost."

from its stated premises. To satisfy the "substantial likelihood" requirement for preliminary injunctive relief, Phototron must present some evidence that Kodak or Colorcraft has sold photofinishing services below *its* cost. In his affidavit, the president of Phototron asserts that Kodak and Colorcraft have been able to undercut the price Phototron offers retailers by "operating at a loss, or [ ] receiving discounts from Kodak on color print paper or chemicals." This "evidence"—sufficient in form for this matter in limine—merely restates the allegation. It affords no showing that Kodak or Colorcraft are actually doing that which Phototron suspects they are doing. To the contrary, Phototron offered evidence of Colorcraft's profitability in 1986, and the price of developing through Kodak labs is among the highest in the industry.[5] We see no likelihood that Phototron would prevail on the merits of its predatory pricing allegation; much evidence, however, suggests that it would not. Accordingly, Phototron has failed to establish standing under a predatory pricing theory.

Phototron argues that other evidence of predatory behavior by Kodak and Colorcraft constitutes antitrust injury. Although the district court made no such findings, we shall address Phototron's concerns individually.

### 1. *Threat of Monopolistic Behavior*

■ Phototron boldly asserts that "[t]he competitor of a monopolist always has standing to challenge the monopolistic conduct forcing it from the market." This facially sensible proposition has been undermined by *Cargill*. In *Cargill*, the Court required that the plaintiff not simply be a competitor of an alleged monopolist; rather, the plaintiff must show antitrust injury. Phototron suggests that the merits of the Kodak–Colorcraft merger are an important consideration in determining standing. As its brief forcefully states: "The monopoly created by the combination of the two largest current competitors clearly threatens to destroy any remaining competitors, including Phototron. Certainly the antitrust laws, which prohibit monopolies, allow a competitor that will be destroyed by a monopolist to use those laws for protection." As Justice Stevens noted in his dissent in *Cargill*, however, the Supreme Court will not grant relief if there is simply "a significant probability that the merger will adversely affect competition in the market in which the plaintiff must compete." 479 U.S. at ——, 107 S.Ct. at 496, 93 L.Ed.2d at 444. Therefore, the notion that merely facing the specter of a monopoly is enough to create standing in a competitor is not the law.

### 2. *Massive Use of Advertising*

■ Phototron urges us to find that massive use of advertising and promotion by the merging companies will exclude competition. Advertising that creates barriers to entry in a market constitutes predatory behavior of the type the antitrust laws are designed to prevent. "A monoplist is not forbidden to publicize its product unless the extent of this activity is so unwarranted by competitive exigencies as to constitute an entry barrier." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 287 (2nd Cir.1979).

■ Phototron supports its advertising injury assertion by pointing to the "advertising-driven Colorwatch program." Despite its complaints regarding the Colorwatch system,[6] Phototron has failed to pro-

---

5. Fuqua's 1986 Annual Report—which was submitted in evidence by Phototron—states that "Colorcraft's earnings increased for the fifth consecutive year, up 33% in 1986 and 12% in 1985.... Profit margins as a percentage of sales *declined* in 1985 because *of* the acquisition of Berkey operations but improved in 1986 primarily from economies gained by eliminating duplicate expenses of Colorcraft and Berkey."

6. "Colorwatch" is a service mark that retailers display indicating that customers may have their film sent to participating Colorwatch processors where film is developed under quality standards on Kodak-brand paper. A Colorwatch wholesale processor must abide by the quality standards set by Kodak and only use Kodak paper and chemicals in its plant. Of course, other plants operated by the wholesaler may use any paper and chemicals it chooses, even Kodak supplies. No special discount is given by Kodak on paper and chemicals to Colorwatch participants.

vide any evidence showing that it has a substantial likelihood of proving this injury at trial. Colorwatch is *not* advertising by the wholesale photofinishers; it is a marketing program aimed at the public through retailers but undertaken by a supplier of materials to wholesale photofinishers. In this instance, the supplier happens to be Kodak. Phototron certainly would not attempt to stop this merger if Colorwatch were instead a marketing system developed by another supplier of paper and chemicals to wholesale photofinishers. Even more revealing, the success of wholesale photofinishing is not tied to being a participant in Colorwatch: Colorcraft has been enormously profitable in the past few years when it has *not* been a member of the Colorwatch program. Phototron may have a monopoly or price discrimination action against Kodak as a manufacturer of chemicals and paper, but it cannot use the perceived anticompetitive effects of Colorwatch to challenge this merger. Without evidence of how advertising in the wholesale photofinishing industry can act as a barrier to Phototron's participation in the industry, we cannot conclude that Phototron is likely to succeed on this theory of predation.

### 3. *Limit Pricing*

■ Setting one's price at a level just below that which a prospective entrant to the market would need to charge in order to sustain a successful entry is often referred to as "limit pricing." As noted in *Dimmitt Agri Industries, Inc. v. CPC Intern, Inc.*, 679 F.2d 516 (5th Cir.1982), this practice clearly evinces monopolistic intent. In *Dimmitt*, the plaintiffs introduced clear evidence that "the company was out to exclude other competitors from the market." 679 F.2d at 524. Kodak contends that, as a matter of law, a company already competing in an industry can never allege limit pricing in order to establish antitrust injury because "a limit price, like a monop-

oly price, is still set at a supra competitive level[;] it can never hurt a competitor that is already in the market." We defer judgment on this contention to a later time. Nonetheless, no evidence in the record supports the allegation of limit pricing, and, as we have said above, without more than a mere allegation, Phototron cannot have standing.[7]

### 4. *Independent Carriers*

■ Phototron contends that the merger will deny competitors access to the market by foreclosing access to independent couriers. This argument clearly lacks merit. Although Kodak will be able to suspend its use of much courier service when it combines its operations with Colorcraft, Phototron will suffer no injury. The courier industry requires neither a large capital investment nor a large consumer base. Newspaper delivery boys are as available in Bugtussle, Texas, as they are in Los Angeles, California. Phototron has presented no evidence to the contrary.

### 5. *Vertical Integration*

■ Kodak's domination of the color film and color print paper and chemicals markets is the final source of injury that Phototron asserts. Phototron argues that Kodak's dominant position in the supply markets will allow it to "manipulate prices and other terms of sale of these products so that independent wholesale photofinishers are at a distinct disadvantage in competing with wholesale photofinishers owned or controlled by Kodak." Phototron's fear of price discrimination is understandable; its attempt to address this fear by stopping this merger is, however, misdirected. If Kodak is manipulating prices on the sale of its paper and chemicals to customers, then a price discrimination suit should be brought against Kodak, not against this merging entity.

---

**7.** Phototron's president claims that Kodak has stated to some of Phototron's major retail accounts that "Phototron will be sold or will go out of business." This speculation by Kodak is not proof of limit pricing; it may simply be a

recognition that Phototron is no longer a viable competitor. Antitrust laws protect competition, not competitors. *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962).

*Conclusion*

█ *Cargill* has imposed significant barriers to competitor attempts to enjoin merger transactions. To obtain a preliminary injunction, competitors must now supply evidence of predatory behavior demonstrating a substantial likelihood that the plaintiff will be injured. Proof that an entity will commit bad acts is difficult to provide at the preliminary injunction stage. This is not to say, however, that once those bad acts occur, relief cannot be had. The antitrust laws provide treble damage recovery for competitors who successfully attack anticompetitive activities.

Preliminary injunctions are extraordinary remedies. The Supreme Court has recognized the danger of granting injunctive relief to parties who are not injured by a merger. That concern, expressed in *Cargill*, must inform our decision today. The order of the district court is

REVERSED.