ANAGO INCORPORATED and Timothy J. McKibben, Plaintiff,

v.

TECNOL MEDICAL PRODUCTS, INC., Capital Southwest Venture Corp., Patrick Hamner, Joel Douglas Inman, and Margaret Kathryn Inman, Defendants.

Civ. A. No. 3–92–250–H.

United States District Court, N.D. Texas, Dallas Division.

Feb. 26, 1992.

T. Richard Handler, Stephen E. Fox, Jenkens & Gilchrist, Dallas, Tex., for plaintiff.

Rebecca P. Adams, James A. Ellis, Jr., Rodney H. Lawson, Stephen J. Pierce, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for defendant Tecnol Medical Products.

Eric R. Cromartie, Hughes & Luce, Dallas, Tex., for defendants Capital Southwest, Patrick Hamner.

Thomas F. Harkins, Jr., Gandy Michener Swindle Whitaker & Pratt, Fort Worth, Tex., for defendants Joel Douglas, Margaret Kathryn Inman.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Plaintiff Anago Incorporated ("Anago") seeks a preliminary injunction enjoining Defendant Tecnol Medical Products ("Tecnol") from further pursuing its attempt to acquire control over Anago and effectuate a merger between the two companies. Anago contends that Tecnol's activities violate Section 7 of the Clayton Act, 15 U.S.C. § 18, which prohibits mergers that substantially lessen competition, and Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e), as amended (the "Williams Act"), which prohibits certain deceptive or manipulative practices in connection with a tender offer.[1]

The Court held an evidentiary hearing on the Application for Preliminary Injunction on February 14, 1992. Based on the testimony and facts presented at the hearing, as well as the affidavits, depositions, arguments, and briefs presented by counsel, the Court concludes that the Plaintiff has not demonstrated a threat of "antitrust injury" sufficient for issuance of a preliminary injunction under Section 16 of the Clayton Act. Nor will a preliminary injunction issue on Plaintiff's securities claim. The Court concludes that Defendant's attempt to acquire control over Anago did not constitute a "tender offer" within the meaning of Section 14 of the Williams Act, and thus, the Plaintiff is not likely to prevail on the merits.

## I. BACKGROUND

Anago and Tecnol design, manufacture and market disposable operating room apparel and certain related disposable medical specialty products. The disposable medical products market, by all accounts, is highly competitive and dominated by a relatively small number of companies. Although Anago and Tecnol do not make all of the same products, they are direct competitors with respect to several of their most important products—surgical face masks, isolation masks, and ice filled insulated ice packs. The two companies do not sell to exactly the same markets, but both focus their marketing strategy on hospitals within the United States. Together, they control a large percentage of the market for surgical face masks, isolation masks, and insulated ice packs sold to U.S. hospitals. Both Anago and Tecnol are based in Fort Worth, Texas.

Incorporated in 1978, Anago is the smaller corporation, privately held, with approximately eighty shareholders and 700 employees. Anago prides itself as a "price maverick," operating on a smaller margin of profit than its competitors. Since its formation, Anago's net sales and market share have steadily increased, particularly with respect to its face mask and insulated ice pack product lines. The growth in business is largely attributable to Anago's willingness and ability to undercut the prices of its competitors, principally Tecnol. Anago's marketing strategy has focused almost exclusively on U.S. hospitals, although in recent years Anago has begun to experience some success in international markets. Anago had about $19 million in sales for the fiscal year ended November 1991.

Tecnol is a publicly held corporation, incorporated in 1976, with sales of approximately $55 million in 1991. Tecnol is the industry leader in surgical masks, isolation masks, and insulated ice packs, capturing the largest market share of each product as sold to U.S. hospitals. Tecnol's marketing strategy, for the most part, is broader and more developed than Anago's; Tecnol

1. Plaintiff's original application for a temporary restraining order or preliminary injunction included a claim based on Section 8 of the Clayton Act. Plaintiff, however, chose not to pursue that claim at the evidentiary hearing. To the extent an injunction is still sought on that claim, it is denied.

sells a broader range of products to a wider array of users. Tecnol has sought to enhance its sales to dentists and industrial users, not simply hospitals. Additionally, international sales of its products comprised approximately 20 percent of its gross sales in 1991.

The events which brought the two companies before this Court began sometime in Fall 1991 when Tecnol began discussions with two major Anago shareholders, Joel Douglas Inman and Paul Shepard, about purchasing their stock. Inman was a co-founder of the company and former chairman of the board. He owned 11.4 percent of Anago's outstanding common stock, and was the third largest common shareholder. Shepard, also a former chairman of the board, owned 14.7 percent of Anago's outstanding common stock, and was Anago's second largest shareholder. Tecnol's negotiations with Inman and Shepard culminated in an agreement to purchase all of their shares.

With Inman's help, Tecnol contacted representatives of Anago's four preferred shareholders and a select number of common shareholders in late 1991 and early 1992. The four preferred shareholders were sophisticated venture capital groups, Anago Partners, L.P., LKCM Investment Partnership, Capital Southwest Venture Corporation, and Cumberland Capital Corporation. After extensive negotiations, Tecnol purchased 100 percent of Anago's preferred stock in late January 1992. Tecnol also contacted about ten common shareholders regarding purchase of their stock, a number of whom have agreed to sell.

At present, Tecnol owns a substantial portion, though not a majority, of Anago's stock. Anago's motion for preliminary injunction is designed to prevent any further acquisition of Anago stock by Tecnol. In the Fifth Circuit, a preliminary injunction will issue only when the movant has established the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not issued; (3) the threatened injury to the movant outweighs any damage the injunc-

tion might cause to the opponent; and (4) that the injunction will not disserve the public interest. *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707 (5th Cir. 1984); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974).

## II. SECURITIES CLAIM

■ Anago asserts that Tecnol violated Section 14(e) of the Williams Act by not disclosing to various Anago shareholders information regarding the true value of Anago stock. Specifically, Anago asserts that Tecnol obtained confidential inside information from Inman and Shepard about Anago, and did not disclose that information when negotiating with Anago shareholders. Without that information, says Anago, the shareholders could not make an informed decision of whether to sell.

Section 14(e) makes it unlawful to include in a tender offer any untrue statement of a material fact or to omit any material fact necessary to make statements not misleading. Section 14(e), however, is not triggered unless the stock transactions at issue constituted a "tender offer"; privately negotiated transactions are outside the province of Section 14. *See, e.g., Wellman v. Dickinson*, 475 F.Supp. 783 (S.D.N.Y.1979), *aff'd on other grounds*, 682 F.2d 355 (2d Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983). The critical preliminary determination, therefore, is whether Tecnol's purchases of Anago stock constituted a "tender offer," or merely a series of privately negotiated transactions.

The most widely cited test for determining whether a stock purchase is a tender offer is the eight-factor analysis developed by the SEC and first applied in *Hoover Co. v. Fuqua Indus.*, Fed.Sec.L.Rep. (CCH) ¶ 97,107 (N.D.Ohio June 11, 1979). The eight factors are: (1) whether there is an active and widespread solicitation of public shareholders for shares of an issuer; (2) whether the solicitation is made for a substantial percentage of the issuer's stock; (3) whether the offer to purchase is made at a premium over the prevailing market

price; (4) whether the terms of the offer are firm rather than negotiated; (5) whether the offer is contingent on the tender of a fixed minimum number of shares, and perhaps, subject to the ceiling of a fixed maximum number to be purchased; (6) whether the offer is open for only a limited period of time; (7) whether the offerees are subject to pressure to sell their stock; and (8) whether public announcements of a purchasing program concerning the target company precede or accompany a rapid accumulation of large amounts of target company securities. *Pin v. Texaco, Inc.,* 793 F.2d 1448, 1454 (5th Cir.1986). Many courts have applied this test. *See, e.g., SEC v. Carter Hawley Hale Stores, Inc.,* 760 F.2d 945, 949–52 (9th Cir.1985); *Energy Ventures, Inc. v. Appalachian Co.,* 587 F.Supp. 734, 740 (D.Del.1984); *Wellman v. Dickinson,* 475 F.Supp. at 823–26.

The Second Circuit has cautioned against elevating the SEC's eight-factor analysis to a "mandatory litmus test," and has applied a second test to determine whether stock purchases constitute a tender offer. *Hanson Trust PLC v. SCM Corp.,* 774 F.2d 47 (2d Cir.1985). In *Hanson,* the court inquired whether there is "a substantial risk that solicitees will lack information needed to make a carefully considered appraisal of the proposal put before them." *Id.* at 57. The court also asked "whether the particular class of persons needs the protection of the Act." *Id.* (quoting *SEC v. Ralston Purina Co.,* 346 U.S. 119, 125, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953)).

In determining the presence of a tender offer, the Fifth Circuit has taken both tests into account. *See Pin v. Texaco, Inc.,* 793 F.2d at 1454–55. It is within this framework that the Court concludes that no tender offer for Anago stock occurred. Only a small portion of Anago's shareholders were approached by Tecnol. That four preferred and ten or so common shareholders, out of a total of eighty or ninety, were contacted does not establish active or widespread solicitation. Moreover, although Tecnol did release a press statement on February 7, 1992, that statement did not solicit additional purchases, but merely announced Tecnol's proposal to merge with Anago. Anago argues that the solicitees "desperately deserved" protection from pressure to sell their Anago shares. Yet Tecnol has produced affidavits from three Anago shareholders who each state that they had "all the information and time [ ] needed to make [their] decision." *See* Affidavits of Buhler, Scavo, and Wolcott. They state further that no time deadlines were imposed for accepting Tecnol's offer and that Tecnol had not told them that the terms were non-negotiable. The evidence indicates that the Anago shareholders were sophisticated investors, and a number were represented by counsel during the negotiations. The Court is not convinced that a substantial gulf of knowledge existed between the negotiating parties. Of the stock purchased by Tecnol, most came from Inman and Shepard, the very same people Anago accuses of divulging to Tecnol the confidential information purportedly so critical to an informed decision to sell. Clearly these individuals do not need the protection of the Williams Act. As to the other shareholders, they had all received the most recently published quarterly financial statement and related report; their decisions were not uninformed.

In sum, there is little evidence of a "substantial risk" that the solicitees lacked information needed to make a "carefully considered appraisal" of Tecnol's proposal. *Hanson,* 774 F.2d at 57. The Court is not convinced that "the particular class of persons affected need the protection of the [Williams] Act." *Id.* Plaintiff Anago, therefore, has not shown a substantial likelihood of success in proving the existence of a tender offer within the meaning of Section 14(e) of the Williams Act. Accordingly, Plaintiff's motion for preliminary injunction on that claim is denied.

## III. ANTITRUST CLAIM

Plaintiff's second claim is that an acquisition of Anago by Tecnol will violate Section 7 of the Clayton Act, 15 U.S.C. § 18. Section 7 prohibits a person engaged in commerce from acquiring the stock or assets of another person engaged in commerce, "where in any line of commerce or in any

activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. Anago alleges that a merger between Tecnol and Anago would substantially lessen .competition in the relevant markets, which Anago defines as sales of surgical face masks, isolation masks, and insulated ice packs in U.S. hospitals. On that basis, Plaintiff seeks an injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26. Section 16 provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.

A private party may not obtain injunctive relief under Section 16 for a violation of Section 7, however, unless it can prove that it suffered an "antitrust injury." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986). Whether a takeover target can ever suffer an "antitrust injury" sufficient to confer standing for injunctive relief under Section 16 has been an issue of great debate, among courts and commentators. Today, that debate resumes.

Several courts have concluded that a target does have sufficient standing to challenge takeovers alleged to violate Section 7. *See Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2d Cir.1989); *Grumman Corp. v. LTV Corp.*, 665 F.2d 10 (2d Cir.1981); *Laidlaw Acquisition Corp. v. Mayflower Group, Inc.*, 636 F.Supp. 1513, 1517–19 (S.D.Ind.1986); *Gearhart Indus., Inc. v. Smith International, Inc.*, 592 F.Supp. 203, 211 n. 1 (N.D.Tex.), *modified on other grounds*, 741 F.2d 707 (5th Cir.1984); *Arnett v. Gerber Scientific, Inc.*, 566 F.Supp. 1270, 1274 (S.D.N.Y.1983); *Whittaker Corp. v. Edgar*, 535 F.Supp. 933, 950 (N.D.Ill.1982). The most fully articulated rationale for this position is found in the Second Circuit's opinion in *Consolidated Gold Fields*, 871 F.2d at 257–60. There the court found target standing because the target's injury—its loss of independence—was *"causally linked* to the injury occurring in the mar-

ketplace, where the acquisition threatens to diminish competitive forces." *Id.* at 258 (emphasis added).

▮ Although allowing target standing is attractive from a policy perspective in that it provides an added mechanism for enforcement of antitrust laws, the reasoning behind it cannot be squared with Supreme Court pronouncements in *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), and *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Those cases defined an "antitrust injury" as one where the alleged threatened loss or damage is "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Cargill*, 479 U.S. at 113, 107 S.Ct. at 491 (quoting *Brunswick*, 429 U.S. at 489, 97 S.Ct. at 697). To show an "antitrust injury," the plaintiff must prove more than simply an "injury causally linked to an illegal presence in the market." *Brunswick*, 429 U.S. at 489, 97 S.Ct. at 697. "A private plaintiff must also show 'that his own injury coincides with the public detriment tending to result from the alleged violation.'" *Consolidated Gold Fields*, 871 F.2d at 264 (Altimari, dissenting) (quoting P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 334.2b, at 305 (Supp.1988)). Thus, within the context of a horizontal merger, the alleged injury must stem not from the merger itself, but rather from the lessening of competition that the merger might cause, or from anticompetitive acts made possible by the merger.

▮ In the case at hand, Anago identifies three injuries resulting from the proposed merger, none of which are antitrust injuries to the Plaintiff. First, Anago asserts that actual and potential competition between Tecnol and Anago will be eliminated. Elimination of competition between two merging entities, however, is the result of any merger, regardless of whether the merger would substantially lessen competition. *See Carter Hawley Hale Stores v. Limited, Inc.*, 587 F.Supp. 246, 250

(C.D.Cal.1984). Second, Anago claims that competition generally in the markets for sale of disposable medical products will be substantially lessened. Yet, decreased competition in the market does not constitute antitrust injury to a takeover target. In fact, after a merger, the target becomes "a part of the very entity it claims will have a supercompetitive advantage," *Carter Hawley*, 587 F.Supp. at 250, and thus, "is a beneficiary, not a victim," of any lessening of competition. Easterbrook & Fischel, *Antitrust Suits by Targets of Tender Offers*, 80 Mich.L.Rev. 1155, 1161 (1982). Finally, Anago argues that if it is eliminated from the market, prices will increase and the users of the product will suffer. Clearly, that is an injury not to Anago, but to third parties. Anago's alleged injuries do not satisfy the narrow "antitrust injury" definition established in *Cargill* and *Brunswick*.

Since *Cargill*, only the Second Circuit has found that a target has standing under Section 7. *See Consolidated Gold Fields*, 871 F.2d 252. Otherwise, the distinct trend among courts has been to interpret the "antitrust injury" definition narrowly. In *Burlington Industries, Inc. v. Edelman*, 666 F.Supp. 799 (M.D.N.C.1987), the court denied the target's motion for preliminary injunction because the plaintiff lacked standing. The court noted that "targets of tender offers routinely seek shelter under Section 7 of the Clayton Act," and concluded that "a court should not interfere with a tender offer unless the target company dispels the inference of disingenuousness by showing that the alleged antitrust violation would expose it to readily identifiable harm." *Id.* at 805–06 (citing *Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 854 (2d Cir.1974)).

Similarly, in *Burnup & Sims, Inc. v. Posner*, 688 F.Supp. 1532 (S.D.Fla.1988), the court granted defendant's motion to dismiss the Section 7 claim on the ground that plaintiff lacked standing. That court further amplified the impropriety of permitting a target's management to challenge a merger on antitrust grounds, stating the following:

[A] target, such as Burnup here, is a poor private attorney general because it is not a "victim" of the alleged violation. The suit must be understood in its true sense, an attempt by the incumbent management to defend their own positions, not as an attempt to vindicate any public interest. Understanding that premise demonstrates the evils of permitting target companies to make use of the antitrust laws as defensive weapons. Shareholders of the target are entitled to many benefits that flow from a tender offer and under any theory of corporate law, managers cannot be permitted to create their own peculiar subjective and possibly suspect "public interest" to the detriment of the targets' true owners, the shareholders. To do so defeats the very ideal of corporate democracy. Thus, when balancing the public policies, a possible anti-trust injury versus the entrenchment of inefficient management and the harm to vindicating shareholder rights, it follows that courts should not grant standing to target companies, especially where if there is an alleged injury, other more appropriate parties can challenge the merger.

*Id.* at 1534–35.

Although the Fifth Circuit has not yet addressed the issue of whether a target has standing to enjoin a proposed merger, its decision in *Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95 (5th Cir.), *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1996, 100 L.Ed.2d 228 (1988), reflects a strict view of the "antitrust injury" requirement. In that case, a company sought to enjoin a merger between two of its competitors, claiming it would be injured by the merger. The plaintiff argued that the merged entities would be able to provide photofinishing services to customers below the plaintiff's cost, which would drive the plaintiff and other competitors out of business. Citing *Brunswick* and *Cargill*, the court ruled that the plaintiff had not shown a substantial likelihood of establishing an "antitrust injury," and thus standing, at trial. The court reached this conclusion even though the plaintiff showed that it would be injured by the proposed merger, and that the

merger could ultimately restrict competition. Quoting *Cargill,* the court stated that a competitor who complains merely of a "significant probability that the merger will adversely affect competition in the market in which [it] must compete," lacks standing to seek injunctive relief under Section 7. *Id.* at 100 (quoting *Cargill,* 479 U.S. at 123, 107 S.Ct. at 496 (Stevens, J., dissenting)).

Plaintiff maintains that a decision in this case is controlled by Judge Mahon's opinion in *Gearhart Industries, Inc. v. Smith International, Inc.,* 592 F.Supp. 203 (N.D.Tex.1984). In *Gearhart,* the court addressed the issue of standing briefly in a footnote, stating in *dictum* that the target had standing to seek a preliminary injunction for an alleged violation of Section 7. *Id.* at 211 n. 11. The court went on to find that plaintiffs were not likely to succeed on the merits of their antitrust claim. In light of *Cargill* and the Fifth Circuit's recent holding in *Phototron, Gearhart* is of limited precedential value and is not binding in this case. In concluding that the target had standing, Judge Mahon distinguished *Brunswick* on the ground that it "involved a claim for *damages* under the antitrust laws on a novel theory." *Id.* In *Cargill,* however, the Supreme Court made clear that for standing purposes, no distinction exists between a claim for damages under Section 4 of the Clayton Act and a claim for injunctive relief under Section 16; both require a showing of "antitrust injury."

In *Phototron,* the Fifth Circuit held that a preliminary injunction under Section 7 of the Clayton Act can issue only when the plaintiff demonstrates "a substantial likelihood of suffering an antitrust injury." *Phototron,* 842 F.2d at 98. Anago cannot meet that burden. Accordingly, its motion for preliminary injunction for any alleged violation of Section 7 of the Clayton Act is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Anago's motion for preliminary injunction, based on its claims under Section 14(e) of the Williams Act and Section 7 of the Clayton Act, is DENIED.

SO ORDERED.