United States Court of Appeals,
Fifth Circuit.

No. 92–1183.

ANAGO, INC., a Texas Corporation, et al., Plaintiffs.

Anago, Inc., a Texas Corporation, Plaintiff–Appellant,

v.

TECNOL MEDICAL PRODUCTS, INC., a Delaware Corporation, et al., Defendants,

Tecnol Medical Products, Inc., a Delaware Corporation, Defendant–Appellee.

Oct. 30, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before JOLLY and DUHÉ, Circuit Judges and PARKER, District Judge.[1]

DUHÉ, Circuit Judge:

Plaintiff–Appellant Anago, Inc. seeks review of the district court's denial of its request for a preliminary injunction under section 16 of the Clayton Act, 15 U.S.C. § 26, 792 F.Supp. 514. Because we find that Anago has failed to allege an antitrust injury, we affirm.

BACKGROUND

For the purposes of this appeal, the facts are undisputed. Anago and Tecnol both make disposable hospital supplies. Both companies service American hospitals, and, together, share a large percentage of the market for their products. Anago, which is smaller than Tecnol and privately held, is known as a price maverick. Tecnol is publicly held.

In 1991, Tecnol began efforts to buy Anago, and eventually succeeded in purchasing all of Anago's preferred stock. After reaching agreements to purchase the common stock of several Anago shareholders, Tecnol publicly proposed a friendly merger. Anago immediately sued Tecnol for violations of the Williams Act, and moved for a preliminary injunction under the Clayton Act, 15 U.S.C.A. § 26 (Supp.1992). The district court denied both of these claims. Anago now appeals the preliminary injunction ruling.

---

[1]Chief Judge of the Eastern District of Texas, sitting by designation.

ANALYSIS

A plaintiff may seek either damages or injunctive relief for violations of the Clayton Act. 15 U.S.C.A. §§ 15, 26. It must, however, prove that it has or will suffer an antitrust injury. *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986) (request for injunctive relief); *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (request for damages). The sole issue we face in this appeal is whether Anago, a target company, has alleged an antitrust injury.

The Supreme Court has defined antitrust injury as an injury " "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.' " *Cargill,* 479 U.S. at 109, 107 S.Ct. at 489 (quoting *Brunswick,* 429 U.S. at 489, 97 S.Ct. at 697). As the Court explained in *Brunswick,* "The injury should reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation." *Brunswick,* 429 U.S. at 489, 97 S.Ct. at 697. Typical anticompetitive effects include increased prices and decreased output. This circuit has narrowly interpreted the meaning of antitrust injury, excluding from it the threat of decreased competition. *Phototron Corp. v. Eastman Kodak Co.,* 842 F.2d 95, 100 (5th Cir.), *cert. denied,* 486 U.S. 1023, 108 S.Ct. 1996, 100 L.Ed.2d 228 (1988).

Before *Cargill* was announced, courts often granted target companies injunctions in the face of antitrust violations, assuming that in the absence of an antitrust injury requirement similar to that announced in *Brunswick* for suits for damages, targets had standing to sue for equitable relief. *See Laidlaw Acquisition Corp. v. Mayflower Group, Inc.,* 636 F.Supp. 1513, 1516–17 (S.D.Ind.1986); *Gearhart Indus., Inc. v. Smith Internat'l, Inc.,* 592 F.Supp. 203, 211 n. 1 (N.D.Tex.) *aff'd in part, modified in part, and vacated in part,* 741 F.2d 707 (5th Cir.1984); *cf. Grumman Corp. v. LTV Corp.,* 665 F.2d 10, 16 (2nd Cir.1981) (no consideration of *Brunswick;* standing based on target's right to preserve separate existence as a competitor); *Whittaker Corp. v. Edgar,* 535 F.Supp. 933, 950 (N.D.Ill.1982) (relying on *Grumman* ). Other courts, requiring a showing of antitrust injury, found that targets lacked standing to sue for injunctive relief. *See Central Nat'l Bank v. Rainbolt,* 720 F.2d 1183, 1186–87 (10th Cir.1983); *ADM Corp. v. Sigma Instruments, Inc.,* 628 F.2d 753 (1st

Cir.1980); *Carter Hawley Hale Stores, Inc. v. Limited, Inc.,* 587 F.Supp. 246, 250 (C.D.Cal.1984); *see also,* 50 Antitrust Trade & Reg. Rep. (BNA) 318 (Mar. 1986) (discussing the Third Circuit's similar ruling in *H.H. Robertson Co. v. Guardian Indus. Corp.,* 50 Antitrust & Trade Reg. Rep. (BNA) 166 (3rd Cir. Jan. 9, 1986), *vacated pending review en banc,* 1986–2 Trade Cas. (CCH) ¶ 66, 911 (3rd Cir. Feb. 12, 1986)).

In light of *Cargill* 's explicit antitrust injury requirement some courts have grown reluctant to grant injunctions to target companies. *See Burnup & Sims, Inc. v. Posner,* 688 F.Supp. 1532, 1534 (S.D.Fla.1988); *Burlington Indus. Inc. v. Edelman,* 666 F.Supp. 799, 805–06 (M.D.N.C.1987). The Second Circuit, in contrast, has not changed its position since the Supreme Court's decision. *Consolidated Gold Fields P.L.C. v. Minorco, S.A.,* 871 F.2d 252 (2nd Cir.1989), *cert. dismissed,* 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989).

In *Gold Fields,* the Second Circuit addressed a situation almost identical to the case at hand. There, a target company, among others, sued to enjoin a takeover attempt. The target alleged that the takeover would destroy its ability to compete independently in the market. The Second Circuit reversed the district court's denial of the preliminary injunction. It reasoned:

> Surely Gold Fields' loss of independence is causally related to the injury occurring in the market place, where acquisition threatens to diminish competitive forces.... It is hard to imagine an injury to competition more clearly "of the type the antitrust laws were intended to prevent," than the elimination of a major competitor's power to determine its prices and output.

*Id.* at 258 (citation omitted).

Anago offered evidence that a takeover will dramatically decrease competition and raise prices in the American market. Anago also offered proof that it will lose its power of independent decision making should Tecnol buy its operations. Relying on *Gold Fields,* it argues that this showing is sufficient to establish an antitrust injury. If we were inclined to follow *Gold Fields,* we would agree. We prefer, however, to adhere to the line of cases predating *Cargill* that require antitrust injury, *see, e.g., Carter Hawley Hale Stores, Inc. v. Limited, Inc.,* 587 F.Supp. 246, 250 (C.D.Cal.1984), and those cases postdating *Cargill* that narrowly interpret the meaning of antitrust injury. *See, e.g.,*

*Burlington Indus. Inc. v. Edelman,* 666 F.Supp. 799, 805–06 (M.D.N.C.1987).[2]

First, we are concerned that the Second Circuit's emphasis on a causal relationship between the loss of independence and the alleged antitrust violation does not comport with Supreme Court precedent. As the Court has stated, a plaintiff "must prove more than injury causally linked to an illegal presence in the market." *Brunswick,* 429 U.S. at 489, 97 S.Ct. at 697.

Second, we are not convinced, as is the Second Circuit, that the loss of independent decision making is the type of injury meant to be prevented by the antitrust laws. As we have stated, this court narrowly construes the meaning of antitrust injury. *Phototron,* 842 F.2d at 100–01. Although *Phototron* examined the suit of a competitor rather than a target company, the difference does not affect the scrutiny with which we must examine alleged injuries. A target may suffer injuries different from a competitor, but both must show that their injuries coincided "with the public detriment tending to result from the alleged violation." *Gold Fields,* 871 F.2d at 264 (Altimari, J., dissenting) (quoting P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 334.2b, at 305 (Supp.1988)).

This is not the first time that this Circuit's views on antitrust law have differed from the Second Circuit's. In *R.C. Bigelow, Inc. v. Unilever N.V.,* 867 F.2d 102 (2nd Cir.), *cert. denied,* 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989), the Second Circuit declined to follow *Phototron* to the extent that it "requires *proof* of antitrust injury on an application for a preliminary injunction...." *Id.* at 109. Thus, the Second Circuit generally takes a lenient stance with regard to the showings necessary to obtain a preliminary injunction.

Proof that a plaintiff will be adversely affected by the merger itself will not suffice in this Court, unless the injuries are related to the anticompetitive effects of the merger. Although Anago presented evidence that the merger will have anticompetitive effects, such as higher prices and

---

[2]Anago cites one post–*Cargill* district court case from this circuit in which the court denied the defendant's motion to dismiss, for lack of standing, a target's request for a preliminary injunction for alleged antitrust violations. *Copeland Enterprises, Inc. v. Guste,* 1988 WL 129318, 1989–2 (CCH) ¶ 68,712 (E.D.La.1988). The court ultimately denied the injunction. On appeal, the defendant again asserted the standing argument. This court affirmed summarily, without written opinion. It is unclear, therefore, whether the panel accepted the defendant's standing argument or agreed with the district court on the merits of the case. *Church's v. Copeland,* 865 F.2d 1264 (5th Cir.1989). Consequently, we find very little guidance in the case.

decreased competition, it did not show that either of these effects will cause its injury. In fact, Anago will suffer a loss of independence whether or not its takeover violates antitrust principles. Moreover, once the takeover is complete, Anago and its shareholders are likely to benefit from any increased prices or decreased competition that might result. *See Carter Hawley,* 587 F.Supp. at 250.

Because Anago's alleged injury is not "of the type the antitrust laws were intended to prevent," the order of the district court denying Anago's request for injunction relief is AFFIRMED.

ROBERT M. PARKER, District Judge, specially concurring.[****]

I concur specially becau, while I agree with the ultimate judgment of the majority in this case, I cannot join in the majority's embrace of a rule categorically foreclosing a target-competitor's access to the private enforcement provision of the antitrust law relative to Section 7 of the Clayton Act (15 U.S.C. § 18 (hereinafter Section 7)). The Supreme Court has a "longstanding policy of encouraging vigorous private enforcement of the antitrust laws." *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 745, 97 S.Ct. 2061, 2074, 52 L.Ed.2d 707 (1977). In the following respects, the majority opinion goes too far.

I.

There is no coherent way to distinguish the applicability of the "*Cargill* test" for "antitrust injury" in a Section 7 case, announced in a case involving a non-target competitor, from its applicability in this case involving a target-competitor. However, I am concerned that the majority's "strict reading" of the test for antitrust injury in this type case goes well beyond the rule announced in *Cargill* and followed in the Fifth Circuit's *Phototron* case. In my view, the majority's analysis is antagonistic to the overarching antitrust policies infusing Sections 7 and 16 of the Clayton Act.

A. *The Loss of a Company's Business Judgment (Competing) Ability is the Type of Injury Meant to be Prevented by Section 16*

Upon the completion of the merger at issue, Anago will lose its ability to make independent (competitive) business judgments. While the majority purports to merely follow *Cargill* and the Fifth Circuit shadow of that case, *Phototron,* the majority opinion in fact departs significantly from those

---

[***]Chief Judge of the Eastern District of Texas, sitting by designation.

opinions. Unlike my colleagues, I am convinced this is a type of "loss or damage" cognizable under Section 16 of the Clayton Act (15 U.S.C. § 26); this conviction is consistent with the policies underlying the antitrust laws, specifically the Clayton Act's Section 16, and it is consistent with the Business Judgment Rule's recognition of the competitive value of management's ability to make independent decisions on behalf of a company.

As the *Cargill* Court emphasized:

It is plain that § 16 and § 4 ... differ in various ways. For example, § 4 requires a plaintiff to show actual injury, but § 16 requires a showing only of "threatened" loss or damage; similarly, § 4 *requires a showing of injury to "business or property,"* [ ], while § 16 *contains no such limitation.* [ ] [T]hese differences ... affect the *nature of the injury* cognizable under each section....

479 U.S. at 111, 107 S.Ct. at 489–490 (citation omitted) (emphasis added). Further, the *Cargill* Court recognized that being *driven out of business* by vice of Sherman Act-violative predatory pricing is an "antitrust injury" under Section 16. *Id.* at 117–118, 107 S.Ct. at 493. *See also id.* at 112 n. 8, 107 S.Ct. at 490 n. 8 [quoting legislative history in the form of a provision-by-provision description of the bill underlying Section 16 by Representative McGillicuddy (a member of the House Judiciary Committee): "There is no provision under the present law ... to prevent threatened loss or damage even though it be *irreparable.* * * * The proposed bill solves this problem for the person, firm, or corporation threatened with loss or damage to property by *providing injunctive relief against the threatened act that will cause such loss or damage.*"] (emphasis added). *Compare United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919) (McReynolds, J.) (emphasizing that the antitrust laws do not impede "the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own *independent discretion* "). Indeed, as the Second Circuit noted in its case on point, *Consolidated Gold Fields:*

It is precisely the loss of this power [that of a major competitor to determine its own prices and output] that makes a [Sherman Act] section 1 conspiracy so pernicious. [ ] For this reason, a member of a section 1 conspiracy has standing to challenge the restraint upon its freedom to compete, even though, in the long run, it may enjoy the benefits of the cartel.

*Consolidated Gold Fields P.L.C. v. Minorco, S.A.,* 871 F.2d 252, 258 (2d Cir.), *cert. dismissed,* 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989).

Additionally, in my view, the majority intimates an opinion about the value of the target

management's independent decision-making ability that is antagonistic to the general commercial law of the land: the Business Judgment Rule. (*See generally Paramount Communications, Inc. v. Time, Inc.,* Civ. A. Nos. 10866, 10670, and 10935, 1989 WL 79880 (Del.Ch. July 14, 1989), [1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 94,514, *aff'd,* 571 A.2d 1140 (Del.1989)) (explaining the Business Judgment Rule). *See also* Irwin H. Warren and Kevin G. Abrams, *Evolving Standards of Judicial Review of Procedural Defenses in Proxy Contests,* 47 Bus.Law. 647, 647 (February 1992).

### B. *Anago Fails to Demonstrate Causation*

Yet, Anago's loss of business judgment ability does not—as is required under the *Cargill* test—*flow from that which makes defendants' acts unlawful.* Anago's loss of independent business judgment-making ability is not *caused by* that which makes this merger anticompetitive.

### II.

"Whether a takeover target can ever suffer an "antitrust injury' sufficient to confer standing for injunctive relief under Section 16 has been an issue of great debate, among courts and commentators. Today, that debate resumes." *Anago, Inc. v. Tecnol Medical Products, Inc.,* 792 F.Supp. 514, 518 (N.D.Tex.1992). The majority's opinion effectively forecloses *any* opportunity for a target-competitor to demonstrate standing in a Section 7 case.

However, the majority miscasts the temporal possibilities for viewing an acquisition under Sections 7 and 16. For purposes of analyzing a target-competitor's ability to demonstrate antitrust injury, the majority unduly narrows its perspective of the merger to the future; the majority's vision is limited to a search for antitrust injury in mere after-merger effects.

As *Cargill* itself recognized, a target may be seen to have demonstrated antitrust injury sufficient to confer standing for injunctive relief under Section 16. The *Cargill* Court appreciated that a Section 7–violative merger can be the *final* episode in an essentially two-part series of antitrust violations—as opposed to the sole or beginning anticompetitive event. *See Cargill,* 479 U.S. at 118, 107 S.Ct. at 493 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)). *Compare Brunswick Corp.,* 429 U.S. at 489, 97 S.Ct. at

697 ("[antitrust] injury should reflect the anticompetitive effect either of the violation *or of the anticompetitive acts made possible by the violation.*").

Section 7 of the Clayton Act focuses attention on the facts to determine if the acquisition is proscribed because it creates a "probable anticompetitive effect." *Brown Shoe Co. v. United States,* 370 U.S. 294, 323, 82 S.Ct. 1502, 1522, 8 L.Ed.2d 510 (1962). In contrast, Sections 1 and 2 of the Sherman Act focus attention on the facts to determine if the acquisition *effects a forbidden intentional plan to achieve monopoly power. See generally United States v. Griffith,* 334 U.S. 100, 105–106, 68 S.Ct. 941, 944–945, 92 L.Ed. 1236 (1948). The majority opinion improperly precludes consideration of cases where a would-be acquirer has engaged in Sherman Act-violative practices toward a targeted competitor (e.g., a predatory pricing scheme implicating Sherman Act Section 2)—in attempts to so weaken its competitor as to make it vulnerable to the aggressor's takeover.[1]

---

[1]In order to state a claim for monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2, a plaintiff must prove:

> (1) Possession of monopoly power in the relevant market;
>
> (2) willful acquisition or maintenance of that power; and
>
> (3) causal antitrust injury.

*Pacific Express, Inc. v. United Airlines, Inc.,* 959 F.2d 814, 817 (9th Cir.1992). While the following facts must be proved to establish an *attempt* to monopolize claim:

> (1) specific intent to control prices or destroy competition;
>
> (2) predatory or anticompetitive conduct to accomplish the monopolization;
>
> (3) dangerous probability of success; and
>
> (4) causal antitrust injury.

*Id.* And "[p]redatory pricing may be defined as pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run." *Cargill,* 479 U.S. at 117–118, 107 S.Ct. at 493. But operating at substantially reduced profit margins does not amount to pricing in a predatory manner; it is simply pricing in a competitive manner. *Phototron Corp. v. Eastman Kodak Co.,* 842 F.2d 95, 99 (5th Cir.1988).

While the *Cargill* Court spoke only to the predatory pricing theory presented to it, I see no reason why a Sherman Act Section 1–oriented theory could not fulfill *Cargill's* prophesy of target standing in a Clayton Act Section 7 case. Section 1 of the Sherman Act prohibits *conspiracies* in restraint of trade. *See* 15 U.S.C. § 1. I foresee that a

In essence, in this sort of case, the would-be acquirer undergoes its anticompetitive efforts in an attempt to eliminate its competitor. And the "climactic" result of these anticompetitive efforts—the acquisition of the targeted competitor—might itself threaten substantially to lessen competition in the relevant market. If so, this *final* antitrust law-violative act of acquisition implicates Section 7 of the Clayton Act. *See Cargill,* 479 U.S. at 118, 107 S.Ct. at 493 ("Predatory pri cing is ... a practice "inimical to the purposes of [the antitrust] laws,' [ ] and one capable of inflicting antitrust injury "[in the form of the form of *being put out of business* ].' ") (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)).

In sum: in cases such as these, a court must begin its analysis at a point in time *before* the merger—and look at the antitrust law-violative conduct *up to and including* the merger. In these cases, the target-competitor can satisfy the two-part *Cargill* test in that: (1) there exists an injury of the type the antitrust laws were intended to prevent—to wit, a Clayton Act Section 7–violative merger; and (2) this injury flows from that which makes the defendants' acts unlawful—to wit, the Sherman Act–violative conduct.

Unhappily for Anago, it did not present this case, or anything approximating it, in time for consideration by the district court. *Compare Cargill,* 479 U.S. at 117–122, 107 S.Ct. at 493–495. ("We conclude that Monfort neither raised nor proved [this] claim ... before the district court. * * * [T]he United States [in its *amicus* brief] invites the Court to adopt in effect a *per se* rule "denying competitors standing to challenge acquisitions on the basis of predatory pricing theories.' [ ] *We decline the invitation.*") (citation to *amicus* brief omitted) (emphasis added). Yet, I think the majority fails to recognize the above-described ground for target-competitor antitrust injury in a Section 7 case, and has thus effectively *accepted* the invitation declined by the *Cargill* Court.

---

would-be acquirer could conspire to restrain trade by eliminating a targeted competitor through an anticompetitive merger—and through such conspiracy, inflict antitrust injury upon the target.