**PACIFIC EXPRESS, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED AIRLINES, INC.,**
**Defendant–Appellee.**

No. 91–55208.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1992.

Decided March 25, 1992.

See also 948 F.2d 536.

Maxwell M. Blecher, Blecher & Collins, Los Angeles, Cal., for plaintiff-appellant.

S. William Livingston, Covington & Burling, Washington, D.C., for defendant-appellee.

Before ALARCON, BEEZER and RYMER, Circuit Judges.

ALARCON, Circuit Judge:

In this action, Pacific Express, Inc. (Pacific Express) alleges that United Airlines, Inc. (United) monopolized, or attempted to monopolize, various airline routes in the western part of the United States, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and that its conduct tortiously interfered with Pacific Express' prospective economic advantage, contrary to California law. The district court granted

summary judgment in favor of United Airlines on each claim.

Pacific Express began operating as an airline on January 27, 1982. At the outset, it concentrated on the route between Los Angeles and San Francisco. After sustaining losses in this market, Pacific Express restructured its business to serve routes connecting western cities with San Francisco and Los Angeles. In the spring of 1983, United entered into negotiations with Pacific Express to provide it with passengers from the western region of the United States so that United could concentrate on its longer routes. These negotiations were terminated in June of that year.

In the summer months of 1983, Pacific Express began showing a profit. On July 27, 1983, United announced that it would expand its service to cities in the western region of the United States which were previously served solely by Pacific Express. United also increased its service on routes where it had previously competed with Pacific Express. By early 1984, Pacific Express was unable to continue business operations. Pacific Express sought protection under Chapter 11 of the Bankruptcy Code on February 4, 1984.

On May 1, 1984, United entered into an agreement with Westair to provide passengers for United's longer flights by serving some of the routes previously maintained by Pacific Express.

Pacific Express argues that reversal of the order granting summary judgment is compelled because genuine issues of material fact exist regarding whether United's expansion of its service had an anti-competitive effect and interfered with Pacific Express' prospective economic advantage.

We affirm because we conclude that Pacific Express failed to present facts showing that its injury resulted from anticompetitive conduct, or that United's sole purpose in expanding its service was anticompetitive. We discuss each of Pacific Express' contentions and the facts pertinent thereto under separate headings.

## DISCUSSION

### I. Antitrust Injury

Pacific Express contends that summary judgment was improperly granted because the facts in this record support a reasonable inference that United's *purpose* in expanding its service was to reduce competition and that its *conduct* was exclusionary or predatory. We review a grant of summary judgment *de novo*. *In re Bullion Reserve of N. Am.*, 922 F.2d 544, 546 (9th Cir.1991). In reviewing an order granting summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* at 546. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find.... that the plaintiff proved his case by the quality and quantity of evidence required by the governing law." *Id.* at 254, 106 S.Ct. at 2513. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court noted, in the context of a Section 1 violation, that "antitrust law limits the range of permissible inferences from ambiguous evidence." *Id.* at 588, 106 S.Ct. at 1356. In ruling on a motion for summary judgment, the court must apply "the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The plaintiff bears the burden of proving a Section 2 claim by a preponderance of the evidence. *Shoppin' Bag of Pueblo, Inc. v. Dillon Companies, Inc.*, 783 F.2d 159, 161 (10th Cir.1986); *Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1188 (5th Cir.1985).

■ In order to state a claim for monopolization under Section 2 of the Sherman Act, a plaintiff must prove:

(1) Possession of monopoly power in the relevant market;

(2) willful acquisition or maintenance of that power; and

(3) causal antitrust injury.

*Movie 1 & 2 v. United Artists Communications' Inc.*, 909 F.2d 1245, 1254 (9th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991).

■ The following facts must be proved to establish an attempt to monopolize claim:

(1) specific intent to control prices or destroy competition;

(2) predatory or anticompetitive conduct to accomplish the monopolization;

(3) dangerous probability of success; and

(4) causal antitrust injury.

*Id.* at 1254.

■ To support its contention that its expansion of service did not constitute predatory conduct, United offered the declaration of Judy Bishop, United's Regional Manager for Passenger Sales. Bishop declared that United's expansion of service was preceded by extensive planning that began before the airlines began negotiations concerning a possible feeder arrangement. Bishop further stated that United expected that the expanded service would produce more passengers to connect with existing San Francisco flights.

United also introduced the declaration of Gary Dorman, a consulting economist. Dorman testified that United continued to serve the western region routes for at least four years after it expanded its services in 1983. During the time that Pacific Express and United were competing on the same routes, Pacific Express' fares were lower than those charged by United.

Pacific Express relies on the following circumstances to support its claim that United's purpose in expanding its service was anticompetitive. Pacific Express presented evidence that United made it difficult and costly for automated travel agencies who used United's computerized reservations system to find and book Pacific Express' competing flights. Pacific Express also introduced evidence that during this same period United prevented Pacific Express from gaining access to gates at the San Francisco Airport. These events occurred prior to the date United expanded its service to compete with Pacific Express in cities outside the Los Angeles–San Francisco corridor.

Pacific Express also introduced the declaration of Frederick Davis, Pacific Express' marketing vice-president. Davis stated that Bill Andres of United told him that United was concerned that Pacific Express and United "would get into each other's pockets." Pacific Express also cites portions of the deposition of Donald C. Moonjian, a United employee who participated in the failed negotiations with Pacific Express, in an attempt to prove United's anticompetitive intent. Moonjian testified that United "did not ask Pacific Express to serve Los Angeles to San Francisco." He further stated that he did not "think we would have wished them to do so because we fly [the Los Angeles to San Francisco route], nor would we wish anyone else to fly [that route]. We would like to have [that route] all to ourselves."

Even assuming that an inference of anticompetitive intent can be drawn from these facts, they do not demonstrate that United's expansion of its service to compete with Pacific Express was predatory or anticompetitive conduct. "Direct evidence of intent to vanquish a rival in an honest competitive struggle cannot help to establish an antitrust violation." *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,* 668 F.2d 1014, 1028 (9th Cir.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); *See Universal Analytics, Inc. v. MacNeal–Schwendler Corp.,* 914 F.2d 1256, 1259 (9th Cir.1990) (even assuming that a secondary motivation of hiring a competitor's employee was to "wound" the competitor, no genuine issue of material fact existed with regards to predatory conduct because legit-

imate business reasons for the hiring existed).

■ In order to demonstrate that it suffered an antitrust injury, Pacific Express must show that its injury was caused by anticompetitive or predatory aspects of United's conduct, not by competition. In *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), the Supreme Court held that a private plaintiff seeking to recover damages under Section 4 of the Clayton Act must prove the existence of an injury "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* at 334, 110 S.Ct. at 1889 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). The injury must be "attributable to an anti-competitive aspect of the practice under scrutiny, 'since "[i]t is inimical to [the antitrust] laws to award damages" for losses stemming from continued competition.'" *Id.* (quoting *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 109–10, 107 S.Ct. 484, 488–89, 93 L.Ed.2d 427 (1986)). "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Id.* 495 U.S. at 344, 110 S.Ct. at 1894 (emphasis in original).

In *Atlantic Richfield*, the Supreme Court rejected the notion that the antitrust injury requirement can be satisfied by a showing that the long-term effect of the allegedly violative conduct would ultimately reduce competition. *Id.* at 337 n. 7, 110 S.Ct. at 1891 n. 7. "Rivals cannot be excluded in the long run by a nonpredatory maximum-price scheme unless they are relatively inefficient. Even if that were false, however, a firm cannot claim antitrust injury from nonpredatory price competition on the asserted ground that it is 'ruinous.'" *Id.* (citations omitted). The Court pointed out that the purpose of the antitrust laws is "the protection of *competition,* not *com-*

*petitors."* *Id.* at 338, 110 S.Ct. at 1891 (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) (emphasis in original)).

■ A defendant's behavior may fairly be characterized as predatory when the defendant is "attempting to exclude rivals on some basis other than efficiency." *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 605, 105 S.Ct. 2847, 2859, 86 L.Ed.2d 467 (1985) (citations omitted). United's attempts to induce Pacific Express to serve routes not flown by United in order to provide United's long distance flights with passengers does not establish predatory or anticompetitive conduct. If the negotiations had not failed, Pacific Express may have survived and prospered. Likewise, proof that United entered into an agreement with Westair to fly routes previously flown by Pacific Express, after Pacific Express ceased operating, does not demonstrate anticompetitive conduct that injured Pacific Express.[1]

In sum, Pacific Express has not shown that its losses were caused by anything other than increased competition. Undoubtedly, the entry of United, a large, well-known carrier, into Pacific Express' markets injured Pacific Express' business opportunities. However, Pacific Express can only recover if its loss "stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atlantic Richfield,* 495 U.S. at 344, 110 S.Ct. at 1894 (emphasis in original). The Sherman Act was "not designed, and has never been interpreted, to reach all business practices, unfair or otherwise, damaging to individual companies." *Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.,* 710 F.2d 1366, 1374 (9th Cir.1983). Because Pacific Express has failed to demonstrate an antitrust injury, we must affirm the summary judgment in favor of United on this claim.

II. Tortious Interference with Prospective Economic Advantage.

■ Pacific Express asserts that genuine issues of material fact exist regarding

---

1. For example, Pacific Express did not show that United offered predatory prices on its expanded service. In fact, the evidence shows that United's prices were higher than Pacific Express in the markets in which they competed.

whether United interfered with Pacific Express' prospective economic advantage under California law. Pacific Express contends that the evidence, when viewed in the light most favorable to it, shows that United's predominant motive in dealing with Pacific Express was to eliminate it as a competitor. Under California law, a competitor is not liable for the tort of interference with prospective business advantage if the competitor can show that:

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

*A–Mark Coin Co. v. General Mills, Inc.,* 148 Cal.App.3d 312, 323, 195 Cal.Rptr. 859, 867 (1983) (quoting Restatement (Second) of Torts § 768).

At the hearing on the motion for summary judgment, the district court commented that the existence of the first three elements raised "no real dispute." This assertion was not disputed by Pacific Express at the hearing.

■ Pacific Express argues for the first time in this appeal that United employed improper means when it used confidential information provided to it by Pacific Express during their unsuccessful negotiations. Generally, we decline to hear issues which were not raised before the district court unless exceptional circumstances exist. *In re: Professional Investment Properties of America,* 955 F.2d 623 (9th Cir. 1992). This circuit has recognized that an exceptional circumstance may exist where the newly raised issue is a purely legal one which either does not depend on the factual record developed below or the pertinent record has been fully developed. *Id.*

Whether United used confidential information wrongfully is a highly fact-specific question. Since United did not have the opportunity to present any evidence to demonstrate that it did not use confidential

information improperly because no factual dispute on this question was asserted before the district court, we decline to consider this issue.

The only issue raised during the summary judgment proceedings regarding this claim was whether United had a genuine intent to compete when it expanded its service on routes served by Pacific Express. Although Pacific Express has offered evidence that United's motives were not *solely* competitive, it did not contradict United's proof that its purpose was, at least in part, competitive. Judy Bishop, United's Regional Manager for Passenger Sales, stated in her declaration that United anticipated that the expansion would "generate substantial new connecting traffic for other San Francisco routes." Moreover, she declared that United expanded its operations at its San Francisco hub with "the full expectation that the [expanded] routes would make a positive contribution to profitability." Pacific Express has failed to demonstrate that United's only purpose in increasing its service was to drive Pacific Express out of business.

■ Pacific Express contends that California decisions have not found the actions of a competitor to be privileged if the plaintiff demonstrates that the *predominant* motive of the defendant was improper. Pacific Express mistakenly relies upon *Hamro v. Shell Oil Co.,* 674 F.2d 784 (9th Cir.1982) to support its argument. However, *Hamro* and the California cases cited therein involved actions for interference with prospective economic advantage against "person[s] seeking to influence the conduct of a business in which he or she has a financial interest." *Id.* at 789. *Hamro* did not involve the defense of competitor's privilege.

In *A–Mark,* the California Court of Appeal set forth the correct standard to determine whether a competitor's actions are privileged. 148 Cal.App.3d at 323, 195 Cal. Rptr. at 867. The court in *A–Mark* held that a person who asserts the competitor privilege defense must demonstrate that his "purpose is *at least in part* to advance

his interest in competing with the other." *Id.* (emphasis added). The court in *A–Mark* explained its ruling as follows:

> The policy of the common law has always been in favor of free competition, which proverbially is the life of trade. So long as the plaintiff's contractual relations are merely contemplated *or* potential, it is considered to be in the interest of the public that any competitor should be free to divert them to himself by all fair and reasonable means.... In short, it is no tort to beat a business rival to prospective customers. Thus, in the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiations behind the plaintiff's back, refuse to deal with him or threaten to discharge employees who do, or even refuse to deal with third parties unless they cease dealing with the plaintiff, all without incurring liability.

*Id.* at 323–24, 195 Cal.Rptr. at 867 (quoting Prosser, *The Law of Torts* § 130 (4th ed. 1971).

Since Pacific Express has not contradicted United's evidence that its motive in expanding its service, at least in part, involved a genuine competitive purpose, no genuine issue of material fact exists regarding the defense of competitor's privilege. We are persuaded from an independent review of the record that no genuine issue of material fact exists regarding the defense of competitor's privilege.

AFFIRMED.