ROBERT M. PARKER, District Judge,
specially concurring.*
I concur specially because, while I agree with the ultimate judgment of the majority in this case, I cannot join in the majority’s embrace of a rule categorically foreclosing a target-competitor’s access to the private enforcement provision of the antitrust law relative to Section 7 of the Clayton Act (15 U.S.C. § 18 (hereinafter Section 7)). The Supreme Court has a “longstanding policy of encouraging vigorous private enforcement of the antitrust laws.” Illinois Brick Co. v. Illinois, 431 U.S. 720, 745, 97 S.Ct. 2061, 2074, 52 L.Ed.2d 707 (1977). In the following respects, the majority opinion goes too far.
I.
There is no coherent way to distinguish the applicability of the “Cargill test” for “antitrust injury” in a Section 7 case, announced in a case involving a non-target competitor, from its applicability in this case involving a target-competitor. However, I am concerned that the majority’s “strict reading” of the test for antitrust injury in this type case goes well beyond the rule announced in Cargill and followed in the Fifth Circuit’s Phototron case. In my view, the majority’s analysis is antagonistic to the overarching antitrust policies infusing Sections 7 and 16 of the Clayton Act.
A. The Loss of a Company’s Business Judgment (Competing) Ability is the Type of Injury Meant to be Prevented by Section 16
Upon the completion of the merger at issue, Anago will lose its ability to make independent (competitive) business judgments. While the majority purports to merely follow Cargill and the Fifth Circuit shadow of that case, Phototron, the majority opinion in fact departs significantly from those opinions. Unlike my colleagues, I am convinced this is a type of “loss or damage” cognizable under Section 16 of the Clayton Act (15 U.S.C. § 26); this conviction is consistent with the policies *252 underlying the antitrust laws, specifically the Clayton Act’s Section 16, and it is consistent with the Business Judgment Rule’s recognition of the competitive value of management’s ability to make independent decisions on behalf of a company.
As the Cargill Court emphasized:
It is plain that § 16 and § 4 ... differ in various ways. For example, § 4 requires a plaintiff to show actual injury, but § 16 requires a showing only of “threatened” loss or damage; similarly, § 4 requires a showing of injury to “business or property,” [], while § 16 contains no such limitation. [ ] [TJhese differences ... affect the nature of the injury cognizable under each section....
479 U.S. at 111, 107 S.Ct. at 489-490 (citation omitted) (emphasis added). Further, the Cargill Court recognized that being driven out of business by vice of Sherman Act-violative predatory pricing is an “antitrust injury” under Section 16. Id. at 117-118,107 S.Ct. at 493. See also id. at 112 n. 8, 107 S.Ct. at 490 n. 8 [quoting legislative history in the form of a provision-by-provision description of the bill underlying Section 16 by Representative McGillicuddy (a member of the House Judiciary Committee): “There is no provision under the present law ... to prevent threatened loss or damage even though it be irreparable. * * * The proposed bill solves this problem for the person, firm, or corporation threatened with loss or damage to property by providing injunctive relief against the threatened act that will cause such loss or damage."'] (emphasis added). Compare United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919) (McReynolds, J.) (emphasizing that the antitrust laws do not impede “the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion"). Indeed, as the Second Circuit noted in its case on point, Consolidated Gold Fields:
It is precisely the loss of this power [that of a major competitor to determine its own prices and output] that makes a [Sherman Act] section 1 conspiracy so pernicious. [] For this reason, a member of a section 1 conspiracy has standing to challenge the restraint upon its freedom to compete, even though, in the long run, it may enjoy the benefits of the cartel.
Consolidated Gold Fields P.L. C. v. Minorco, S.A., 871 F.2d 252, 258 (2d Cir.), cert. dismissed, 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989).
Additionally, in my view, the majority intimates an opinion about the value of the target management’s independent decision-making ability that is antagonistic to the general commercial law of the land: the Business Judgment Rule. {See generally Paramount Communications, Inc. v. Time, Inc., Civ. A. Nos. 10866, 10670, and 10935, 1989 WL 79880 (Del.Ch. July 14, 1989), [1989 Transfer Binder] Fed.Sec. L.Rep. (CCH) para. 94,514, affd, 571 A.2d 1140 (Del.1989)) (explaining the Business Judgment Rule). See also Irwin H. Warren and Kevin G. Abrams, Evolving Standards of Judicial Review of Procedural Defenses in Proxy Contests, 47 Bus.Law. 647, 647 (February 1992).
B. Anago Fails to Demonstrate Causation
Yet, Anago’s loss of business judgment ability does not — as is required under the Cargill test — flow from that which makes defendants' acts unlawful. Anago’s loss of independent business judgment-making ability is not caused by that which makes this merger anticompetitive.
II.
“Whether a takeover target can ever suffer an ‘antitrust injury’ sufficient to confer standing for injunctive relief under Section 16 has been an issue of great debate, among courts and commentators. Today, that debate resumes.” Anago, Inc. v. Tecnol Medical Products, Inc., 792 F.Supp. 514, 518 (N.D.Tex.1992). The majority’s opinion effectively forecloses any opportunity for a target-competitor to demonstrate standing in a Section 7 case.
However, the majority miscasts the temporal possibilities for viewing an acquisition under Sections 7 and 16. For purposes of analyzing a target-competitor’s ability to demonstrate antitrust injury, the majority unduly narrows its perspective of the *253 merger to the future; the majority’s vision is limited to a search for antitrust injury in mere after-merger effects.
As Cargill itself recognized, a target may be seen to have demonstrated antitrust injury sufficient to confer standing for injunctive relief under Section 16. The Cargill Court appreciated that a Section 7-violative merger can be the final episode in an essentially two-part series of antitrust violations — as opposed to the sole or beginning anticompetitive event. See Cargill, 479 U.S. at 118, 107 S.Ct. at 493 (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)). Compare Brunswick Corp., 429 U.S. at 489, 97 S.Ct. at 697 (“[antitrust] injury should reflect the anti-competitive effect either of the violation or of the anticompetitive acts made possible by the violation.”).
Section 7 of the Clayton Act focuses attention on the facts to determine if the acquisition is proscribed because it creates a “probable anticompetitive effect.” Brown Shoe Co. v. United States, 370 U.S. 294, 323, 82 S.Ct. 1502, 1522, 8 L.Ed.2d 510 (1962). In contrast, Sections 1 and 2 of the Sherman Act focus attention on the facts to determine if the acquisition effects a forbidden intentional plan to achieve monopoly power. See generally United States v. Griffith, 334 U.S. 100, 105-106, 68 S.Ct. 941, 944-945, 92 L.Ed. 1236 (1948). The majority opinion improperly precludes consideration of cases where a would-be acquirer has engaged in Sherman Act-viola-tive practices toward a targeted competitor (e.g., a predatory pricing scheme implicating Sherman Act Section 2) — in attempts to so weaken its competitor as to make it vulnerable to the aggressor’s takeover.[1] In essence, in this sort of case, the would-be acquirer undergoes its anticompetitive efforts in an attempt to eliminate its competitor. And the “climactic” result of these anticompetitive efforts — the acquisition of the targeted competitor — might itself threaten substantially to lessen competition in the relevant market. If so, this final antitrust law-violative act of acquisition implicates Section 7 of the Clayton Act. See Cargill, 479 U.S. at 118,107 S.Ct. at 493 (“Predatory pricing is ... a practice ‘inimical to the purposes of [the antitrust] laws,’ [] and one capable of inflicting antitrust injury ‘[in the form of being put out of business ].’ ”) (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)).
In sum: in cases such as these, a court must begin its analysis at a point in time before the merger — and look at the antitrust law-violative conduct up to and including the merger. In these cases, the target-competitor can satisfy the two-part Cargill test in that: (1) there exists an injury of the type the antitrust laws were intended to prevent — to wit, a Clayton Act Section 7-violative merger; and (2) this injury flows from that which makes the de *254 fendants’ acts unlawful — to wit, the Sherman Act-violative conduct.
Unhappily for Anago, it did not present this case, or anything approximating it, in time for consideration by the district court. Compare Cargill, 479 U.S. at 117-122, 107 S.Ct. at 493-495. (“We conclude that Mon-fort neither raised nor proved [this] claim ... before the district court. * * * [T]he United States [in its amicus brief] invites the Court to adopt in effect a per se rule ‘denying competitors standing to challenge acquisitions on the basis of predatory pricing theories.’ [] We decline the invitation.”) (citation to amicus brief omitted) (emphasis added). Yet, I think the majority fails to recognize the above-described ground for target-competitor antitrust injury in a Section 7 case, and has thus effectively accepted the invitation declined by the Cargill Court.

 Chief Judge of the Eastern District of Texas, sitting by designation.

. In order to state a claim for monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2, a plaintiff must prove:
(1) Possession of monopoly power in the relevant market;
(2) willful acquisition or maintenance of that power; and
(3) causal antitrust injury.
Pacific Express, Inc. v. United Airlines, Inc., 959 F.2d 814, 817 (9th Cir.1992). While the following facts must be proved to establish an attempt to monopolize claim:
(1) specific intent to control prices or destroy competition;
(2) predatory or anticompetitive conduct to accomplish the monopolization;
(3) dangerous probability of success; and
(4) causal antitrust injury.
Id. And "[pjredatory pricing may be defined as pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run.” Cargill, 479 U.S. at 117-118, 107 S.Ct. at 493. But operating at substantially reduced profit margins does not amount to pricing in a predatory manner; it is simply pricing in a competitive manner. Phototron Corp. v. Eastman Kodak Co., 842 F.2d 95, 99 (5th Cir.1988).
While the Cargill Court spoke only to the predatory pricing theory presented to it, I see no reason why a Sherman Act Section 1-oriented theory could not fulfill Cargill’s prophesy of target standing in a Clayton Act Section 7 case. Section 1 of the Sherman Act prohibits conspiracies in restraint of trade. See 15 U.S.C. § 1. I foresee that a would-be acquirer could conspire to restrain trade by eliminating a targeted competitor through an anticompetitive merger — and through such conspiracy, inflict antitrust injury upon the target.