**CATCH CURVE, INC., Plaintiff,**

v.

**VENALI, INC., Defendants.**

**No. CV05–04820 DDP (AJWX).**

United States District Court, C.D. California.

May 3, 2007.

**1032**

Matthew S. Warren, Robert A. Sacks, Sullivan and Cromwell, Los Angeles, CA, for Plaintiff.

John C. Carey, Douglas L. O'Keefe, Carey Rodriguez Greenberg & Paul, Miami, FL, Steven M. Goldsobel, Steven M. Goldsobel Law Offices, Los Angeles, CA, for Venali, Inc.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AND COUNTERCLAIM–DEFENDANT'S MOTION TO DISMISS**

DEAN D. PREGERSON, District Judge.

This matter is before the Court on plaintiff Catch Curve, Inc. and third party defendant j2 Global Communications, Inc.'s motion to dismiss counts two through six and count eight of defendant Venali, Inc.'s amended counterclaim and third party complaint. After reviewing the parties' arguments, the Court grants in part and denies in part the motion to dismiss and adopts the following order.

## I. BACKGROUND

### A. *The Infringement Suit*

On July 1, 2005, Plaintiff Catch Curve, Inc. ("Catch Curve"), brought this suit against Defendant Venali, Inc. ("Venali"), alleging patent infringement. Catch Curve is the owner by assignment of the following patents: U.S. Patent No. 6,785,-021 (the "'021 Patent"), U.S. Patent No. 6,643,034 (the "'034 Patent"), U.S. Patent No. 5,459,584 (the "'584 Patent"), U.S. Patent No. 5,291,302 (the "'302 Patent"), U.S. Patent No. 4,994,926 (the "'926 Patent"). (Compl.¶¶ 31–54.) These patents are all entitled "Facsimile Telecommunications System and Method". (*Id.* ¶¶ 5, 7, 9, 11, 13.) Venali provides a fax-to-email service that Catch Curve argues infringes these patents under 35 U.S.C. § 271. (*Id.* ¶¶ 18, 31–54.) Catch Curve also requests injunctive relief, an award of reasonable attorneys fees under 35 U.S.C. § 285, and costs and interest. (*Id.* at 9.)

On December 5, 2005, Venali filed an answer to the complaint and a counterclaim against Catch Curve. On December 27, 2006, Venali filed an answer, amended counterclaim, and third-party complaint against j2 (Catch Curve's parent company). On January 8, 2007, Venali filed a corrected answer to the complaint, amended counterclaim and third party complaint.

In its answer, Venali contends that it is not infringing, and will not infringe, directly or indirectly, any claim of the '021, '034, '584, '302, or '926 patents ("patents-in-suit"). (Countercl. and Third Party Compl. ¶¶ 56, 58, 60, 62, 64.) Venali also asserts a number of affirmative defenses: (1) The patents-in-suit are invalid for failure to comply with the requirements of 35 U.S.C. § 101, et seq. (*Id.* ¶¶ 57, 59, 61, 63,

65.) (2) Claims under the patents-in-suit are barred, in whole or in part, by the doctrines of laches, waiver and estoppel. (*Id.* ¶¶ 66–75.)(3) Catch Curve has failed to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). (*Id.* ¶ 76.)(4) Catch Curve's claims for injunctive relief are barred by the existence of an adequate remedy at law. (*Id.* ¶ 77.) (5) Catch Curve is precluded by the doctrine of prosecution history estoppel and/or prior art from asserting any construction of the claims in the patents-in-suit that would cover Venali's accused products and/or services. (*Id.* ¶ 78.)(6) Catch Curve is precluded from enforcing the patents-in-suit due to patent misuse. (*Id.* ¶ 79.)(7) Catch Curve's conduct related to the patents-in-suit constitutes unclean hands and renders the patents unenforceable. (*Id.* ¶ 80.)

### B. *The Counterclaim and Third Party Complaint*

In its amended counterclaim and third party complaint, Venali alleges that j2 and Catch Curve have engaged in an illegal scheme to unfairly compete with Venali and other competitors in the consumer/small office/home office ("SOHO") Internet facsimile services industry in violation of the Sherman and Clayton Acts, the Lanham Act and California Unfair Competition Law. (*Id.* ¶ 82.) Venali alleges that the following conduct by Catch Curve and j2 supports its claims: (1) harassment of competitors generally, and Venali in particular, by bringing baseless patent infringement suits, (2) tortious interference with Venali's business relations based on a campaign of threats of patent infringement lawsuits targeting Venali's customers, (3) willful infringement of competitors' trademarks, (4) dissemination of false information about the validity and applicability of the Audio Fax patent portfolio, and (5) other unfair, anti-competitive, and illegal actions.

Venali also alleges that j2 was instrumental in the creation of Catch Curve, that Catch Curve is a wholly owned subsidiary of j2 and at all relevant times has been the alter ego of j2. (*Id.* ¶¶ 90, 102.) Venali asserts that in furtherance of its anti-competitive scheme j2 has sought to conceal its relationship with Catch Curve. (*Id.* ¶¶ 93, 99, 100, 101.)

Counts Two through Six and Eight are the subject of the instant motion to dismiss. Counts Two, Three, and Four each allege that j2 and Catch Curve have engaged in conduct that may qualify as anti-competitive to form the basis of a claim of monopolization under Section Two of the Sherman Act. Count Two addresses j2 and Catch Curve's conduct in the instant litigation, characterizing the litigation as a sham. Count Three addresses j2 and Catch Curve's license pooling practices, characterizing these practices as tying. Count Four addresses j2 and Catch Curve's institution of numerous patent suits against j2 competitors—characterizing this conduct as a pattern of baseless litigation intended to stifle competition in the relevant market.

Counts Five and Six allege that Catch Curve and j2 engaged in tortious interference with existing and prospective business relationships in violation California common law. Count Eight alleges that Catch Curve and j2 have violated the California Unfair Competition Law, Cal. Bus. & Prof.Code §§ 17200 *et seq.*, on the basis of the same conduct that allegedly supports Counts Two through Six.

### C. *Motion to Dismiss*

On February 16, 2007, Catch Curve and j2 filed a motion to dismiss Counts Two through Six and Count Eight of Venali's counterclaim under Rule 12(b)(6). Catch

Curve and j2 first argue that the attempted monopolization claims in Counts Two and Four should be dismissed under the *Noerr Pennington* doctrine, which protects parties from antitrust liability for litigation brought to enforce their legal rights. Contending that the *Noerr Pennington* doctrine also bars tortious interference claims predicated on protected conduct related to litigation, j2 and Catch Curve suggest that Counts Five and Six also fail to state a claim.

Next, j2 and Catch Curve argue that the Court should strike the tortious interference claims in Counts Five and Six under California's Anti–SLAPP Statute, Cal.Civ. Proc.Code § 425.16, which requires early-dismissal of lawsuits aimed at chilling First Amendment activity. Catch Curve and j2 also argue that the cease-and-desist letters that form the basis of the tortious interference claims are protected under California's litigation privilege codified in Cal Civ.Code § 47(b). Catch Curve and j2 finally contend that the tortious interference claims also fail because they were not pled with particularity.

Catch Curve and j2 also argue that Count Three, the tying claim, fails in light of a recent Federal Circuit holding that vindicates the practice of patent pooling as not anti-competitive. Finally, they argue that Count Eight, the § 17200 claim, should be dismissed because it is based on the conduct underlying the other causes of action. They assert that if the other counts are dismissed, § 17200 of the California Business and Professions Code should not allow Venali to circumvent the rationale that defeats the other causes of action.

## II. DISCUSSION

### A. *Legal Standard For 12(b)(6)*

Dismissal under Rule 12(b)(6) is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *Newman v. Universal Pictures*, 813 F.2d 1519, 1521–22 (9th Cir.1987). The Court must view all allegations in the complaint in the light most favorable to the non-movant and must accept all material allegations—as well as any reasonable inferences to be drawn from them—as true. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.1983).

Motions to dismiss for failure to state a claim are disfavored, *see Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995)

### B. *Sherman Act § 2*

Section 2 of the Sherman Act states: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce ... shall be deemed guilty of a felony...." 15 U.S.C. § 2.

■ Venali's counterclaim seems to allege attempted monopolization by j2 and Catch Curve, invoking the "dangerous probability" language. To state a claim for attempted monopolization, a plaintiff must allege: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal anti-

trust injury." *SmileCare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir.1996), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996)(quoting *Pacific Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir.1992)).

### 1. *Market Definition*

Venali alleges that the relevant product market is the "consumer/small office/home office ('SOHO') internet facsimile services market in the United States". (Countercl. and Third Party Compl. ¶ 112.) Without adopting Venali's market definition, the Court evaluates the allegations of attempted monopolization in relation to this alleged market.

### 2. *Specific Intent*

 Venali alleges j2 and Catch Curve intended to gain monopoly power for j2 by engaging in the potentially anticompetitive conduct that is the basis for the claim. (*Id.* ¶¶ 121, 130.) At the pleading stage, facts to support allegations about j2 and Catch Curve's intent are likely in the possession of j2 and Catch Curve and may be discovered by Venali at a later stage in the litigation. Furthermore, anticompetitive conduct alone can satisfy the specific intent requirement if the conduct "form[s] the basis for a substantial claim of restraint of trade" or is "clearly threatening to competition or clearly exclusionary." *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1309 (9th Cir.1982); *see Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993)(stating that unfair tactics can suffice to prove intent to monopolize). Therefore, Venali's allegations of specific intent are sufficiently stated to survive a motion to dismiss.

### 3. *Dangerous Probability of Success*

 Venali also alleges that j2 and Catch Curve control more than 80% of the relevant product market. (*Id.* ¶ 115.) The Ninth Circuit has held that a 44% market share was sufficient as a matter of law to support a finding of market power for attempted monopolization. *See Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir.1995). However, "neither monopoly power nor a dangerous probability of achieving monopoly power can exist absent evidence of barriers to new entry or expansion." *Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1154 (9th Cir.1997). Venali has alleged that "there are substantial barriers to entry into the relevant product market" including without limitation those created by the allegedly anticompetitive conduct. (Countercl. and Third Party Compl. ¶ 113.) Venali has alleged that j2 and Catch Curve's litigation and licensing strategy creates additional capital costs for new entrants into the market. (*Id.* ¶¶ 106, 131, 133) Viewed in the light most favorable to Venali, it has pled facts to support the conclusion that Catch Curve and j2 have a dangerous probability of creating a j2 monopoly.

### 4. *Antitrust Injury*

 Venali has alleged that as a result of the violations of antitrust law, it has been damaged in its business or property. (*Id.* ¶¶ 128, 134.) In order to demonstrate that it suffered an antitrust injury, Venali must show that its injury was caused by anticompetitive or predatory aspects of Catch Curve and j2's conduct, not by competition. *Pacific Express*, 959 F.2d at 818 (noting that the purpose of the antitrust laws is "the protection of competition, not competitors.") (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)). Venali has alleged that j2 and Catch Curve's conduct has "rendered competitors less competitive" and has a dangerous probability of

"stifl[ing] innovation" in the market. (Countercl. and Third Party Compl. ¶¶ 132, 133.) Viewed in the light most favorable to Venali, these allegations support the conclusion that Venali has suffered causal antitrust injury.

### 5. Anticompetitive Conduct

■■■ In order to state a claim for attempted monopolization, Venali must allege that Catch Curve and j2 have engaged in "predatory or anticompetitive conduct to accomplish the monopolization." *SmileCare Dental Group*, 88 F.3d at 783. The question of whether a particular course of conduct is predatory or anticompetitive (also referred to as exclusionary) "cannot be answered by simply considering its effect on" Venali. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985).

> In addition, it is relevant to consider its impact on consumers and whether it has impaired competition in an unnecessarily restrictive way. If a firm has been 'attempting to exclude rivals on some basis other than efficiency,' it is fair to characterize its behavior as predatory ... [The word] 'exclusionary' comprehends at the most behavior that not only (1) tends to impair the opportunities of rivals, but also (2) either does not further competition on the merits or does so in an unnecessarily restrictive way.

*Id.* (citing 3 P. Areeda & D. Turner, Antitrust Law 78 (1978); R. Bork, The Antitrust Paradox 138 (1978)).

### i. Noerr Pennington and Sham Litigation

Catch Curve and j2 have moved to dismiss Venali's antitrust claims, arguing that Noerr Pennington immunity bars a claim of antitrust liability based on conduct petitioning the government. Venali has alleged that the instant litigation is a sham, therefore, it does not deserve the protection of the *Noerr Pennington* doctrine.

■■■ The *Noerr–Pennington* doctrine does protect parties from antitrust liability predicated on acts of petitioning the government. *See Noerr Motor Freight, Inc.*, 365 U.S. 127, 135, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 670, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). However, these activities are not protected if the petitioning act is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144, 81 S.Ct. 523. In analyzing whether the conduct of bringing a lawsuit is protected, the Supreme Court has held: "litigation cannot be deprived of immunity as a sham unless the litigation is objectively baseless." *Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 51, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). The Court created a two-part test for determining when a suit is "objectively baseless":

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of the definition a court should focus on whether the baseless suit conceals an attempt to interfere directly with a competitor's business relationships through the use [of] the governmental process—as opposed to the outcome of that process— as an anticompetitive weapon.

*Id.* (citations omitted). The Federal Circuit has adopted this framework and applies it in determining whether patent litigation is a sham. *See Nobelpharma*, 141 F.3d at 1072.

### ii. *Venali's Allegations*

In its counterclaim, Venali alleges that j2 and Catch Curve have engaged in a course of conduct aimed at damaging competition in the relevant product market. Venali alleges that this course of conduct includes: (1) a pattern of acquiring competitors, (2) a pattern of vexatious litigation brought by j2 and Catch Curve aimed at injuring j2's market rivals (including this patent infringement suit), (3) a pattern of using the litigation to coerce competitors to pay for "unnecessary" licenses as a means of extracting money from competitors to stifle competition, (4) sending cease and desist letters in bad faith to Venali's customers threatening to sue these entities for patent infringement, (5) offering licenses to relevant patents in a pool (a tying claim), (6) disseminating false information to the industry regarding the validity and applicability of their patents to the relevant product market. (Venali's Counterclaim and Third Party Complaint ¶¶ 82, 91, 92, 121, 126, 131.)

Catch Curve and j2 argue that the attempted monopolization actions fail to state a claim because Venali argues for antitrust liability based on patent litigation and litigation-related activity, all of which j2 and Catch Curve contend is protected by the *Noerr Pennington* doctrine. Venali contends that the litigation at issue is a sham, piercing the protection of *Noerr Pennington.* Venali's central argument is that Catch Curve relies on an objectively unreasonable construction of the claims in the AudioFax patents to support its infringement case against Venali. Venali asserts that Catch Curve's advocated claim construction exceeds the scope of the right granted under the AudioFax patents, ignores the prosecution history that bars it from arguing this construction, and is objectively baseless, meaning no reasonable

litigant could realistically expect success on these arguments on the merits.

The Ninth Circuit has stated that "[w]hether something is a genuine effort to influence governmental action, or a mere sham, is a question of fact." *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1253 (9th Cir.1982). At present, the Court cannot rule out the possibility that the claim construction arguments advocated by Catch Curve are objectively unreasonable. *See Hoffman–La Roche, Inc. v. Genpharm, Inc.,* 50 F.Supp.2d 367, 380 (D.N.J.1999) (declining to find *Noerr Pennington* immunity on a motion to dismiss because "reasonableness is a question of fact, and the Court cannot make such factual determinations on a factual controversy roiled by a motion to dismiss.") The claim construction hearing in this case is scheduled for May 11, 2007, so these construction arguments will be directly before the Court in a matter of weeks. After that hearing, the Court will be better situated to evaluate the objective reasonableness of the arguments to decide the applicability of *Noerr Pennington* immunity.

### iii. *Venali's Allegations Satisfy the Pleading Standard*

The Ninth Circuit has noted that "there is a policy disfavoring the pre-trial dismissal of antitrust actions because the proof lies largely in the hands of the defendants." *Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 835 (9th. Cir.1980) (citing *Poller v. Columbia Broadcasting,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)); *see also Hydranautics v. FilmTec Corp.,* 70 F.3d 533, 537 (9th Cir.1995)(determining whether particular litigation was a sham "could not properly be resolved against Hydranautics on the basis of the pleadings. The outcome [would] depend on evidence.")

Venali alleges that the instant litigation is "objectively baseless in that no reasonable litigant could realistically expect success on the merits". (Venali's Counterclaim and Third Party Complaint ¶ 131.) This contention is predicated on the allegation that there is no support in the patents or the law for Catch Curve's claim construction argument. Venali also alleges that the suit was brought in bad faith with the intention of interfering with Venali's ability to service existing customers and compete for new ones. (*Id.* ¶¶ 121, 132.) Because Venali has sufficiently pled the requisite elements of sham litigation to defeat *Noerr Pennington* protection, the Court cannot conclude that Venali has failed to state an antitrust claim on this basis.

In detailing the pattern of litigation, Venali alleges that j2 and Catch Curve have brought numerous cases similar to this one that are objectively baseless and that serve their bad faith purpose of injuring competition in the relevant market. (*Id.* ¶¶ 106, 107, 130–132.) Venali cites lawsuits brought by Catch Curve against Call Wave, EasyTel Communications, Protus IP Solutions, and Mijanda as examples of this pattern. (*Id.* ¶ 107.) To support the allegation that these suits were brought in bad faith, Venali notes that three of the lawsuits were filed within weeks of the defendants' objecting to j2's efforts to trademark the term "efax". (*Id.*) Venali has pled enough of a basis to overcome dismissal on its attempted monopolization claim. Catch Curve will, of course, be entitled to raise its arguments again on summary judgment. Resolution of these claims at this juncture, however, is premature.

#### iv. *Applicable Law*

The parties have devoted substantial portions of their briefs to arguing about how the Court should analyze the pattern of allegedly baseless lawsuits brought with anticompetitive intent. These arguments address an unresolved conflict between the Ninth Circuit cases that place greater importance on the subjective intent of the actor in analyzing whether the institution of a series of lawsuits operates as a restraint on trade [1] and the objectively baseless standard discussed above. The Federal Circuit has indicated that district courts should employ Federal Circuit law to determine whether a patent case is sham litigation eviscerating the protection of *Noerr Pennington*. *Nobelpharma AB v. Implant Innovations*, 141 F.3d 1059, 1067 (Fed.Cir.1998). However, the Federal Circuit has not yet addressed a situation where a district court is presented with a pattern of patent lawsuits that may be deemed an illegal restraint on trade under that circuit's law, even without a showing that each individual suit is objectively baseless. Without deciding whether the Court will require Venali to prove that each litigation in the alleged pattern is baseless, the Court is satisfied that Venali has sufficiently stated a claim of sham litigation in the instant case to overcome the motion to dismiss.

#### D. *Tying*

In order to show that a tying arrangement violates Section 1 of the Sherman Act, Venali must establish: 1) two distinct products or services; 2) a sale or agreement to sell the tying product conditioned upon the purchase of the tied prod-

---

1. See *USS–POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council,* 31 F.3d 800, 811 (9th Cir.1994) ("When dealing with a series of lawsuits, the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival").

uct; 3) market power in the relevant market for the tying product; and 4) the tied product involves a "not insubstantial" amount of interstate commerce. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 12–18, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). *See also Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 464, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1157 (9th Cir.2001). The Ninth Circuit also requires that the defendant have an economic interest in the tied product. *See County of Tuolumne,* 236 F.3d at 1158.

■ To state a claim for tying Venali must allege two distinct products and two distinct markets. Venali's complaint fails to define two distinct markets mentioning a "Relevant Innovation Market" only one time and providing no details to support this market definition. (Complaint ¶ 126). Although one might conclude that Venali contends that the AudioFax patents are the tying product and that some "unwanted j2 patents" are the tied product, this essential allegation is not obvious from the claims. Furthermore, Venali has failed to allege that the tied product involves a "not insubstantial" amount of interstate commerce, or to plead facts which if true support the conclusion that Catch Curve or j2 have an economic interest in the "unwanted j2 patents." As a result, the Court dismisses the tying cause of action for failure to state a claim, with leave to amend.

### E. *Tortious Interference*

#### i. *Failure to State a Claim*

Venali alleges that j2 and Catch Curve have committed the torts of interference with existing and prospective business relationships under California common law.

■ To state a claim for tortious interference with existing business relationships Venali must plead facts that if true, would establish: (1) a valid contract between Venali and a third party, (2) j2 and Catch Curve's knowledge of the contract, (3) j2 and Catch Curve's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach of the contractual relationship, and (5) resulting damage. *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.,* 106 Cal.App.4th 1219, 1239, 132 Cal.Rptr.2d 57 (2003). In the complaint, Venali did not identify the particular contract(s) with which Catch Curve allegedly interfered. However, as Venali noted at oral argument, at the time it filed its complaint, it was still determining which contracts definitely fell within this claim. Through discovery and the parties' supplemental responses, Venali has now identified these contracts. As the notice pleading standard under the Federal Rules of Civil Procedure is liberal, the Court finds that Catch Curve will not be prejudiced if the tortious interference claim is permitted to remain. *See* Fed.R.Civ.P. 8.

■ To state a claim for tortious interference with prospective business relationships Venali must plead: (1) an economic relationship between it and some third party, with the probability of future economic benefit to Venali; (2) j2 and Catch Curve's knowledge of the relationship; (3) intentional acts on the part of j2 and Catch Curve designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to Venali proximately caused by the acts of j2 and Catch Curve. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003); *Buckaloo v. Johnson,* 14 Cal.3d 815, 827, 122 Cal.Rptr. 745, 537 P.2d 865 (1975). For the same reason identified above, the

Court permits this claim to stand. Thus, the motion to dismiss the tortious interference claims is denied.

### ii. Anti–SLAPP and Litigation Privilege

■ The Court notes that it has not ruled out the possibility that the infringement lawsuit is a sham. If the Court is persuaded, after the claim construction hearing, that the infringement action meets the requirements for sham litigation, the related conduct of sending cease-and-desist letters to Venali's customers will not be protected as an act in furtherance of the Catch Curve's right of petition or free speech under the United States or California Constitution. Accordingly, an Anti–SLAPP motion to strike the tortious interference claims will fail. At this time, however, the Court declines to rule on this argument.

### F. California Business and Professions Code S 17200

■ Catch Curve argues that the Court should dismiss Venali's § 17200 claim because this type of claim is derivative of Venali's other claims and should fail if the others fail. Because Venali has adequately alleged an attempted monopolization claim, however, the Court does not dismiss the "tag along" § 17200 claim.

## III. CONCLUSION

For the reasons stated herein, the Court GRANTS in part and DENIES in part, as follows:

(1) Catch Curve and j2's motion to dismiss the Second, Fourth, and Eighth Counts on the basis of Noerr–Pennington immunity is DENIED. The extent to which the infringement litigation may constitute a sham based on objectively unreasonable claim construction argu-

ments is more properly decided after the claim construction hearing.

(2) Catch Curve and j2's motion to dismiss the Third Count of tying, for failure to state a claim is GRANTED with leave to amend.

(3) Catch Curve and j2's motion to dismiss the Fifth and Sixth Counts of tortious interference for failure to state a claim is DENIED.

**IT IS SO ORDERED.**